# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                  Case No. 15-11574

REAL PROPERTY LOCATED AT 6001 N. OCEAN DRIVE, UNIT 806, HOLLYWOOD, BROWARD COUNTY, FLORIDA, INCLUDINGA LL BUILDINGS, FIXTURES, IMPROVEMENTS AND APPURTENANCES

    Defendant.

_____/

**ORDER DENYING CLAIMANT'S MOTION TO DISMISS OR TRANSFER VENUE**

This is a civil forfeiture case brought by Plaintiff United States of America against Defendant Real Property pursuant to 31 U.S.C. § 5312. Pending before this court is the Claimant's Motion to Dismiss for Failure to State a Claim and Improper Venue brought by Claimant Olga Zigmond. In the alternative, Claimant moves that this matter be transferred to the U.S. District Court for the Southern District of Florida. The matter has been fully briefed and the court concludes a hearing on the motion is unnecessary. *See* E.D. LR7.1(e)(2). For the reasons stated below, the court will deny Claimant's motion.

## I. BACKGROUND

According to the government's complaint, Claimant's husband, Boris Zigmond, is a licensed chiropractor who operates a chiropractic office in Oak Park, Michigan. (Dkt. # 1, Pg. ID 4.) Over the last four years, the Internal Revenue Service has conducted an ongoing structuring investigation of Boris and others closely associated with him, including Claimant. (*Id.* at Pg. ID 5.) At issue, are over 300 deposits totaling

$1,746,250 made into sixteen bank accounts at twelve different financial institutions between December 2010 and March 2015. (Id. at Pg. ID 6.) The overwhelming majority of these transactions were cash deposits of thousands of dollars, many of which were in excess of $9,000. (Dkt. # 1.) Despite the large cash flow over the course of nearly five years, Boris and his associates only made one cash deposit that was for more than the $10,000, the statutory reporting threshold. (*Id.*)

On October 31, 2011, Claimant used proceeds from nine of these suspect bank accounts to purchase Defendant Real Property – a condominium located at 6001 N. Ocean Drive, # 806, Hollywood, Florida – where she currently resides along with her children. (*Id.* at Pg. ID 33.)

In March 2015, the IRS obtained warrants and seized funds located in eleven of the suspect bank accounts. (*Id.* at Pg. ID 34.) Two months later, they brought this action against Defendant Real Property, alleging that the condominium had been purchased with criminally structured funds, and was thus subject to forfeiture. (*Id.* at 33, 37.) In June 2015, Claimant filed a Verified Claim of Interest in Defendant Real Property (Dkt. # 5), and filed the instant motion. (Dkt. # 6.) No one else has asserted a claim on Defendant Real Property. (Dkt. # 6, Pg. ID 59.)

## II. STANDARD

### A. Dismissal under Rule 12(b)(6)

The pleading stage of a civil forfeiture action is governed jointly by the Federal Rules of Civil Procedure and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. 18 U.S.C. § 983(a)(3)(A). While "the Supplemental Rules govern, the normal set of rules may help to clarify any ambiguity." *United States v. One*

2

*Gulfstream G-V Jet Aircraft,* 941 F. Supp. 2d 1, 13 (S.D.N.Y. 2013). In the past, courts in this district have noted that the Supplemental Rules impose a higher pleading threshold on the plaintiff, requiring the government to "go beyond the simple notice pleading required in ordinary civil cases . . . and state with specificity the factual basis of its claim." *United States v. One Million Seven Hundred Thousand Dollars ($1,700,000.00) in U.S. Currency,* 545 F. Supp. 2d 645, 651 (E.D. Mich. 2008) (quoting *United States v. One,* 50 F. Supp. 2d 789, 796 (N.D. Ill. 1999)).

Specifically, Supplemental Rule E(2)(a) mandates that complaints brought in *in rem* actions "state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." Fed. R. Civ. P. Supplemental Rule E(2).  Additionally, Supplemental Rule G(2)(f) requires the government's complaint to "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." *Id.* at G(2)(f). Courts have found that "[r]ead in conjunction, these rules require the government to allege enough facts such that the court may infer that the property is subject to forfeiture." *One Gulfstream,* 941 F. Supp. 2d at 13-14.  Nevertheless, a court may not dismiss the complaint simply because "the government did not have adequate evidence *at the time the complaint* was filed to establish the forfeitability of the property." Fed. R. Civ. P. Supplemental Rule G(8)(b)(ii) (emphasis added).

### B. Dismissal or Transfer of Venue

3

"The requirements for venue are set by statute, as are the remedies available for improper and inconvenient venue." *Kerobo v. Sw. Clean Fuels, Corp.*, 285 F.3d 531, 538 (6th Cir. 2002). In forfeiture proceedings, venue is proper in any judicial district where "any of the acts or omissions giving rise to the forfeiture occurred." 28 U.S.C. § 1355. As in all other civil actions, venue is also proper in a judicial district where: (1) "any defendant resides, if all defendants are residents of the State in which the district is located"; (2) "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated"; or (3) "any defendant is subject to the court's personal jurisdiction with respect to such action," if "there is no district in which an action may otherwise be brought." 28 U.S.C. § 1391(b).

If a district court determines that a case has been brought in the wrong venue, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Federal Rule of Civil Procedure 12(b)(3) provides the procedural vehicle for raising the defense of "improper venue." Fed. R. Civ. P. 12(b)(3). On a motion to dismiss under Rule 12(b)(3), "the plaintiff bears the burden of proving that venue is proper. The Court may examine facts outside the complaint but must draw all reasonable inferences and resolve factual conflicts in favor of the plaintiff." *Audi AG & Volkswagen of Am., Inc. v. Izumi*, 204 F. Supp. 2d 1014, 1017 (E.D. Mich. 2002).

When a case is brought in a proper venue, a district court may still transfer it "to any other district or division where it might have been brought," when doing so serves "the convenience of parties and witnesses" and is "in the interest of justice." 28 U.S.C.

4

§ 1404(a); *see also United States v. P.J. Dick Inc.*, 79 F. Supp. 2d 803, 806 (E.D. Mich. 2000). "As the permissive language of the transfer statute suggests, district courts have 'broad discretion' to determine when party 'convenience' or 'the interest of justice' make a transfer appropriate." *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009) (quoting *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994)); *see also Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). The moving party bears the burden of demonstrating by a preponderance of the evidence that, "in light of these factors, 'fairness and practicality strongly favor the forum to which transfer is sought.'" *Amphion, Inc. v. Buckeye Elec. Co.*, 285 F. Supp. 2d 943, 946 (E.D. Mich. 2003) (quoting *Thomas v. Home Depot U.S.A., Inc.*, 131 F. Supp. 2d 934, 936 (E.D. Mich. 2001)).

### III. DISCUSSION

### A. Dismissal under Rule 12(b)(6)

Claimant argues that the government's complaint should be dismissed for failure to specifically plead knowledge and intent. Claimant's argument is without merit and will be denied.

Banks are required to file a Currency Transaction Report for any deposit made in excess of $10,000. 31 U.S.C. § 5313(a). The law criminalizes those who *"for the purpose of evading [these] reporting requirements . . .* structure or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more domestic financial institutions." 31 U.S.C. sec 5324(a)(3) (emphasis added). The Sixth Circuit has interpreted this law to mean that for the government to prove structuring allegations in forfeiture proceedings, three elements must be established:

(1) the defendant must, in fact, have engaged in acts of structuring;

5

>   (2) he must have done so with knowledge that the financial institutions involved were legally obligated to report currency transactions in excess of $10,000; and
>
>   (3) he must have acted with the intent to evade this reporting requirment.

*United States v. Sutton,* 387 F. App'x 595, 599 (6th Cir. 2010). The government is not required to plead specific facts to support the premise that the claimant had actual knowledge of the reporting requirements, but can satisfy its burden of proof through circumstantial evidence laid out in the complaint. *See United States v. Two Hundred Twenty-Five Thousand Three Hundred Dollars ($225,300.00) in U.S. Funds from Firstbank (Jackson, TN) Account # xxx-xx-xxxx in the Name of Norene Pumphrey,* No. 1:12-cv-01075, 2012 WL 4486105 (W.D.Tenn. Sept. 27, 2012).

Specifically, courts have inferred knowledge of the reporting requirements and intent to circumvent them when (1) claimant and associates repeatedly deposited large sums of money over an extended period of time without ever making a single deposit of over $10,000, *United States v. $263,327.95,* 936 F. Supp. 2d 468, 474 (D.N.J. 2013); (2) claimants and associates made multiple cash deposits at multiple banks on the same day, all of which were below the reporting requirement, but together totaled more than $10,000, *United States v. $766,670.00 previously contained in Bank of Am. Account number 000376803507 held in the name of Shin's Trading, DBA Cala Products*, No. 13-4108, 2014 WL 1669929, at *3 (D.N.J. April 28, 2014) ("The Complaint also alleges that depositors frequently made multiple deposits to the Account in a single city on a single day or on consecutive days, and that with just one exception, these deposits were individually less than $10,000.00, but combined the deposits aggregated to more than $10,000.00."); or (3) the government's pleading demonstrates that there

6

was a pattern of depositing large sums of money in round figures, *United States v. Funds in the Amount of $45,666.66,* No. 2:14-cv-379, 2015 WL 163549 (N.D.Ind. Jan. 13, 2015).

In the instant case, the government has pled more than enough circumstantial evidence in its complaint to satisfy the statutory pleading requirements. The complaint alleges that between December 2010 and March 2015, Claimant and her associates made 318 large deposits into a series of bank accounts, only one of which exceeded the statutory pleading requirements. (Dkt. # 1, Pg. ID 5, 8-12, 13-16, 20-22, 25-27.) Roughly a quarter of these deposits were for amounts between $9,000 and $9,800. (*Id.* at 8, 10, 12-13, 16, 19, 20-22, 25, 26-27.) This alone would be sufficient to survive a 12(b)(6) motion to dismiss, for as the Seventh Circuit observed in a similar case, "it is unlikely, to the point of absurdity, that it was pure coincidence" that so many large deposits were made "in denominations under $10,000." *United States v. Cassano*, 372 F.3d 868, 879 (7th Cir. 2004) (discussing structuring conspiracy involving 51 cashed checks)*, vacated on other grounds,* 543 U.S. 1109 (2005). This is especially so because almost all of the deposits were made in large, rounded amounts.

But, the complaint also alleges that on at least nineteen different occasions, Claimant and her associates made deposits into multiple bank accounts on the same day – the total of which, if deposited together, would have triggered the federal reporting requirements. (Dkt. # 1, Pg. ID 32.) Some of these deposits were made within minutes of each other. For example, on May 25, 2011, a deposit of $9,000 was made into a PNC bank account at 11:20 A.M. (Dkt. # 1, Pg. ID 32.) Thirteen minutes later, a second deposit of $6,700 was made into an account at Comerica Bank. (*Id.*) Then,

twenty-two minutes later, a final deposit of $9,000 was made into an account at Fifth Third Bank.  (*Id.*)

Taken together, these allegations are certainly enough to infer knowledge and intent.  As such, the government has alleged enough facts with sufficient particularity to enable the claimant to "be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." Claimant's Motion to Dismiss for Failure to State a Claim is therefore baseless and will be denied.

### B. Dismissal or Transfer of Venue

Claimant argues that this case should be dismissed for lack of proper venue, or in the alternative transferred to the Southern District of Florida for the convenience of the parties.  For the reasons discussed below, Claimant's Motion will be denied.

Claimant's argument that venue in the Eastern District of Michigan is inappropriate is without merit.  The statutory guidelines for venue are quite liberal, requiring only that the government plead that some act – any act – or omission giving rise to the forfeiture have taken place within the chosen judicial district.  The government's complaint specifically states that several of the allegedly structured deposits used to purchase Defendant Real Property were made at bank branches located within the Eastern District of Michigan. (Dkt. # 1, Pg. ID 18, 20, 21, 32-33.)  In addition, other funds used to pay off the condominium were derived from cashier's checks which originated from bank accounts located in this district – bank accounts into which more allegedly structured deposits had been made.  (*Id.* at 17, 23, 24-33.)  As such, the government has satisfied its burden of proof, and venue is properly laid.

Furthermore, while there is no question that this action could have originally been brought in the Southern District of Florida – the Defendant Real Property, after all, is located within that district, (Dkt. # 6, Pg. ID 57) – Claimant has not satisfied her burden of proving that the Southern District of Florida would, in fact, be a more convenient forum for litigation.

In making this determination, courts consider a number of factors including (1) the convenience and relative means of the parties; (2) the convenience of the witnesses; (3) the location of relevant documents and relative ease of access to sources of proof; (4) the availability of process to compel the attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the locus of operative facts, and (7) trial efficiency and the interests of justice. *See Grand Kensington, LLC v. Burger King Corp.,* 81 F. Supp. 2d 834, 836 (E.D. Mich. 2000); *Applied Energy Technology, Inc. v. Solar Liberty Energy Systems, Inc.,* No. 09-11959, 2009 WL 2777079, at *5 (E.D. Mich. Aug. 27, 2009). Each factor will be considered in turn.

### 1. Convenience of the parties

The first factor enumerated in 28 U.S.C. § 1404(a) is the convenience of the parties. This includes not only the original parties, but also third-parties such as Claimant. *See, e.g. In re Volkswagen AG,* 371 F.3d 201, 205 (5th Cir. 2004) (stating that the district court erred "because it did not consider in its analysis the convenience of the third-party defendants"). In considering this factor, courts are often "sensitive to the personal circumstances of the litigants and have taken into account . . . the impact, including the financial impact, that a change of venue would have on each litigant." 15 Wright, Miller & Cooper, *Federal Practice and Procedure,* § 3849 (2d Ed. 1986); *see*

9

*also Langton v. Combalecer,* No. 06-11987, 2007 WL 925736, *3 (E.D. Mich. March 26, 2007).

This factor slightly favors transferring the case to Florida. Claimant is a resident of Florida and, due to the government seizure of her bank accounts, fears that litigation costs "will be multiplied if she, her experts, attorneys and other essential witnesses are compelled to attend depositions, other hearings, and potential trial in" the Eastern District of Michigan. (Dkt. # 6, Pg. ID 6.) These are genuine concerns, but are somewhat ameliorated by the fact that Claimant's attorney is actually located in Bloomfield Hills. (Dkt. # 6, Pg. ID 49.) Additionally, Claimant has strong family connections to Michigan. Her husband lives here, and maintains a residence here. (Dkt. # 9, Pg. ID 81.) In fact, she visited him here as recently as July 2015. (*Id.*) Thus, while Claimant's financial circumstances give slight weight to her petition to transfer, it is not determinative, especially in light of the other factors discussed below.

### 2. Convenience of the Witnesses

The convenience of the witnesses – especially nonparty witnesses – is one of the most important factors in considering a motion to transfer venue. 15 Wright, Miller & Cooper, *Federal Practice and Procedure,* § 3851 at 451 (2d Ed. 1986); *see also Thomas v. Home Depot, U.S.A., Inc.,* 131 F. Supp. 2d 934, 937 (E.D. Mich. 2001). The "party seeking the transfer must clearly specify the essential witnesses to be called and *must make a general statement of what their testimony will cover.*" *Smith v. Kyphon, Inc.,* 578 F. Supp. 2d 954, 963 (M.D.Tenn. 2008) (emphasis added); *see also American Eagle Outfitters, Inc. v. Tala Bros. Corp.,* 457 F. Supp. 474, 478 (S.D.N.Y. 2006) ("A motion to transfer venue under § 1404(a) must be accompanied by an affidavit

containing detailed factual statements identifying the potential principal witnesses expected to be called and a general statement of the substance of their testimony. . . . Absent such a showing, the motion should be denied.") (internal quotations ommitted).

Here, Claimant has not met her burden of proof. While she does specifically list three witnesses, including herself, who are permanent residents of Florida, she has failed to even hint at what their testimony might contain and why it would be important. Furthermore, while she alleges that two of her witnesses, Yelena Bolotinskaya and Felix Zigmond are "elderly retirees for whom travel to Michigan would be both costly and difficult given their advanced ages" (Dkt. # 6, Pg. ID 60-61), her claim is undermined by the fact that both have strong family ties to Michigan and traveled here in July 2015. (Dkt. # 9, Pg. ID 81; Dkt. # 10, Pg. ID 114.) On top of that, it should be noted that Bolotinskaya and Zigmond would need to travel to Michigan only in the event of a trial. According to the Federal Rules of Civil Procedure, travel for depositions would be limited to within 100 miles of where the witnesses live, are employed, or regularly transact business in person. Fed. R. Civ. P. 45(c)(A).

By contrast, one key witness, Claimant's husband, is currently the subject of parallel criminal proceedings in the state of Michigan and thus is under court order not to leave the state. (Dkt. # 9, Pg. ID 81.) Traveling to Florida for depositions or trial would not only be inconvenient for him, it would also be a violation of bond.

Furthermore, since the government's complaint alleges that the majority of the structuring conspiracy took place in Michigan (Dkt. # 1), it is likely that there are a plethora of witnesses residing in this state. Claimant has not even acknowledged that such witnesses are inevitable, let alone provided the court with an explanation for why

forcing them all to travel to Florida would be more convenient, expeditious, or in the interest of justice.

### 3. Location of Relevant Documents and Access to Proof

This factor does not favor either Michigan or Florida. While the majority of witnesses are located in Michigan, some are located in Florida, as are some of the pertinent bank records. But, access to documents is a less significant factor in this era of electronic communication. *See Applied Energy Technology, Inc. v. Solar Liberty Energy Systems, Inc.,* No. 09-CV-11959, 2009 WL 2777079 (E.D. Mich. Aug. 27, 2009) (quoting *Coker v. Bank of Am.,* 984 F. Supp.. 757, 766 (S.D.N.Y. 1997). Additionally, it is probable that witnesses will be deposed where they are located, regardless of venue. Thus, this factor is evenly split between Michigan and Florida.

### 4. Availability of Process to Compel Attendance of Witnesses

Another factor in considering whether to transfer venue under § 1404 is the availability of process to compel the attendance of unwilling witnesses. *Overland, Inc. v. Taylor,* 79 F. Supp. 2d 809, 811 (E.D. Mich. 2000). As mentioned above, it is likely that a majority of witnesses are in Michigan. Therefore, this factor favors denial of transfer.

### 5. The Cost of Obtaining Willing Witnesses

This factor also favors Michigan. As has been mentioned repeatedly, the majority of the potential witnesses live in Michigan. Claimant has failed to explain how transferring the case to Florida would decrease costs associated with obtaining willing witnesses. As such this factor favors denial of Claimant's motion.

### 6. Locus of Operative Fact

The locus of operative facts slightly favors keeping venue in Michigan, as well. Claimant alleges that this case is just about a "purchase, in Florida, of Florida real property, by a Florida resident, with funds from 9 Florida banks." (Dkt. # 6, Pg. ID 56.) But, the *operative* facts – those creating the right of foreclosure – mostly took place here in Michigan. While the Defendant Real Property may have been located in Florida, the alleged structuring conspiracy that gave rise to the property's foreclosure took place here. While many (but not all) of the suspect bank accounts were located in Florida, the allegedly structured deposits were made in Michigan, as well. As such, this factor favors denying Claimant's motion and continuing to litigate here.

### 7. Interests of Justice and Public Policy

The "interests of justice" is a separate statutory factor that must be considered when deciding whether to transfer venue. 28 U.S.C. § 1404(a). The term is somewhat amorphous, and refers to a host of public policy concerns – especially trial efficiency. *Id.* Courts generally prefer cases arising from the same nexus of operative facts be tried in the same judicial district. "The fact that the other cases arising from the transaction or event are in the same district from which transfer of the action is sought obviously is an argument against transfer." 15 Wright, Miller & Cooper, *Federal Practice and Procedure,* § 3854 (2d Ed. 1986). Other public interest factors frequently considered by courts include the "local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 260 (1981) (internal

quotations ommitted). "Basically, a court may consider any factor that may make a trial easy, expeditious, and inexpensive." *Grand Kensington,* 81 F. Supp. 2d at 836 (internal quotations omitted).

Here, Claimant has made no argument to support her assertion that the public interest "militates in favor of a transfer to Florida." (Dkt. # 6, Pg. ID 61.) As noted above, Claimant's husband has recently been indicted in the Eastern District of Michigan on charges related to the structuring allegations that gave rise to the instant action. *United States v. Zigmond*, No. 15-20283 (E.D. Mich.. May 12, 2015). As such, preference should be given to keeping the parallel cases within the same district – a strong argument against transfer. Furthermore, Michigan certainly has an interest in resolving a foreclosure case that arose as a result of actions taken by a local conspiracy within its border – even if the foreclosed property is located in another state. As such, the interests of justice clearly favor denying Claimant's motion.

For the stated reasons, after balancing all of the factors, the court finds that the Claimant has not satisfied her burden of proof to overcome the strong presumption in favor of Plaintiff's choice of forum. Claimant did not address a majority of the factors, and the ones that she did tend to favor continuing litigation here in Michigan.

## IV. CONCLUSION

IT IS ORDERED that Claimant's June 26, 2015 Motion to Dismiss or to Transfer Venue (Dkt. # 6) is DENIED.

                              S/Robert H. Cleland
                              ROBERT H. CLELAND
                              UNITED STATES DISTRICT JUDGE

Dated: September 4, 2015

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, September 4, 2015, by electronic and/or ordinary mail.

                                               S/Lisa Wagner
                                               Case Manager and Deputy Clerk
                                               (313) 234-5522